UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON


CIVIL ACTION NO. 14-cv-37-WOB

MAY HELTON                                                                          PLAINTIFF


v.                              <u>REPORT AND RECOMMENDATION</u>


CAROLYN W. COLVIN, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                   DEFENDANT


* * * * * * * * * *

Plaintiff May Helton brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying her application for benefits under Title II and Title XVI of the Social Security Act.  This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits.  After a thorough review of the administrative record, for the reasons explained below it will be **recommended** that Plaintiff's Motion for Summary Judgment (R. 12) be **denied**, and the Commissioner's Motion for Summary Judgment (R. 13) be **granted**.

## I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).  Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406.  "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." *Id.* (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits.  42 U.S.C. § 423(a)(1).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 42(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability.  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity."  *Vance*, 260 F. App'x at 803 (*citing* 20 C.F.R. §§ 404.1520(b), 416.920(b)).  Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id.* at 803-04.  "A 'severe impairment' is one which 'significantly limits. . . physical or mental ability to do basic work

2

activities.'" *Id*. at 804 (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)).  Third, if the claimant is not

performing substantial gainful activity, has a severe impairment that is expected to last for at least

twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part

404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or

work experience.  *Id*. (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(d)).  Fourth, the claimant is not

disabled if her impairment(s) does not prevent her from doing her past relevant work.  *Id*.  Lastly,

even if the claimant cannot perform her past relevant work, she is not disabled if she can perform

other work that exists in the national economy.  *Id*. (*citing* Abbott, 905 F.2d at 923).  Throughout

this process, the claimant carries the overall burden of establishing that she is disabled, but the

Commissioner bears the burden of establishing that the claimant can perform other work existing

in the national economy.  *Id*. (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2004)).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's alleged disability began on December 18, 2009, when she was 44 years old.

(Administrative Record (A.R.) 44).  Plaintiff has at least a high school education and has been

employed as a instructional/teacher's assistant and as a fast food worker.  (*Id*. at 40).  Plaintiff

testified that she could not work due to a variety of physical ailments, including diabetic neuropathy

affecting her lower extremities, pain and poor balance due to amputated toes, recurrent cellulitis, and

low back pain.  (*Id.* at 38).

On March 5, 2010, Plaintiff protectively filed a Title II application for disability insurance

benefits.  (*Id.* at 33).  Plaintiff also filed a Title XVI application for supplemental security income

on March 9, 2010.  (*Id.*).  These claims were denied initially on June 3, 2010, and again upon

reconsideration on August 9, 2010. (*Id*. at 55-58, 63-65). Plaintiff then appeared and testified at a hearing before an Administrative Law Judge on September 1, 2011. (*Id*. at 33). At the hearing, the ALJ heard testimony from Plaintiff and an impartial vocational expert (VE). (*Id*. at 376-424). After receiving testimony and reviewing the record, the ALJ issued a written decision on October 12, 2011, finding Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*. at 30-42). The Appeals Council subsequently denied Plaintiff's requests for review on July 12, 2013 (*id.* at 23-25), and again on January 10, 2014 (*id.* at 8-10).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id*. at 30). *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since December 18, 2009, the alleged onset date of her disability.[1] (A.R. 35). The ALJ acknowledged that although Plaintiff had been employed after the alleged onset disability date, this work activity did not rise to the level of substantial gainful activity. (*Id.*). At step two, the ALJ determined that Plaintiff had the severe impairments of diabetes mellitus with probable diabetic neuropathy; status-post multiple toe amputations; and obesity under 20 C.F.R. §§ 404.1520(c) and 416.920(c). (*Id.*).

At step three, the ALJ analyzed Plaintiff's impairments individually and in combination, and found that Plaintiff did not have an impairment that meets or equals the level of severity set forth in any of the Listing of Impairments under the applicable Federal Regulation. (*Id.* at 37). At step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following limitations:

---

[1] The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. (A.R. 33).

> [Plaintiff can] sit for a total of six hours in an eight-hour work day;
> stand and/or walk for a total of two hours in an eight-hour workday;
> never climb ladders, ropes, or scaffolds; occasionally crouch or climb
> ramps or stairs; frequently balance, kneel, crawl, or stoop; and she
> can use a cane when performing prolonged walking or standing.

(*Id*. at 37).

At the hearing, the ALJ heard testimony from an impartial VE who stated that based on the RFC provided by the ALJ, Plaintiff could not perform her past relevant work. (*Id*. at 40). The ALJ then proceeded to step five, and adopted the VE's opinion that, given the stated RFC, there were other jobs in the national economy that Plaintiff would be able to perform, namely representative occupations such as an assembler, inspector, or an order clerk. (*Id*. at 41). Accordingly, the ALJ concluded that Plaintiff was not "disabled" for social security purposes. (*Id*. at 42).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council, and on July 12, 2013, the Appeals Council denied Plaintiff's request for review. (*Id*. at 23-25). On January 10, 2014, the Social Security Appeals Council set aside their earlier decision to consider additional information. (*Id*. at 8-10). The Social Security Appeals Council again denied Plaintiff's request for review on January 10, 2014, rendering the ALJ's October 12, 2011, decision denying Plaintiff benefits the final decision of the Commissioner. (*Id*.). On March 3, 2014, having exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was not supported by substantial evidence and was contrary to law and regulation. (R. 1, at 1).

Plaintiff has filed a Motion for Summary Judgment, arguing that the ALJ's RFC assessment is not supported by substantial evidence because it fails to properly accommodate Plaintiff's limitations resulting from her chronic venous stasis. (R. 12, at 7). Plaintiff also contends that the

5

ALJ's credibility analysis is not supported by substantial evidence.  (R. 12, at 11).  Each of these arguments will be addressed in turn.

## III.    ANALYSIS

### A.    The ALJ's RFC determination is supported by substantial evidence.

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because it failed to properly accommodate Plaintiff's limitations from her chronic venous stasis. Specifically, Plaintiff asserts that the ALJ's RFC assessment failed to properly accommodate Plaintiff's chronic venous stasis because it did not include a limitation to allow her to elevate her legs above heart level while sitting.  (R.12, at 7, 10).  Plaintiff argues that had the ALJ properly accounted for this limitation, she would have been found to be disabled.  (*Id.* at 10-11).

The RFC is assessed using all relevant medical and other evidence.  20 C.F.R. §§ 404.1545, 416.945.  The impairments and symptoms the claimant suffers from may cause physical and mental limitations that affect what the claimant can do in a work setting; therefore the determined RFC is the most the claimant can do despite those limitations.  (*Id.*).  When the plaintiff has a severe impairment, but the impairment does not meet or equal a listed impairment, the ALJ will consider the limiting effects of all the impairments, even those that are not severe, in determining the RFC. 20 C.F.R. §§ 404.1545(e), 416.945(e).  This assessment made by the ALJ is of the plaintiff's limitations on what she can or cannot do, not of what she suffers from.  *Howard v. Comm'r of Soc Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

However, the mere diagnosis of a condition does not automatically establish work-related limitations.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Therefore, the ALJ's

6

determination of a severe impairment at step two may or may not affect the RFC.  *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).  To determine if a limitation existed, an ALJ must "consider all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529, 416.929.  Thus, a plaintiff has the burden to prove, through evidence, that a limitation does exist.

Here, Plaintiff alleges that her chronic venous stasis requires her to elevate her legs, and as a result she is not capable of sustaining full-time, competitive work.  (R. 12, at 10-11).  Plaintiff contends that the ALJ erred in his conclusion that he believed Plaintiff's venous stasis was not as severe as she alleged.  (R.12, at 8).  Plaintiff claims that the ALJ incorrectly implied that Plaintiff's lower extremity edema was a short-lived problem which resolved quickly.  (*Id.*).  In support, Plaintiff acknowledges a progress note from February 2011 indicating that Plaintiff had no edema, but contends that on April 1, 2011, and April 12, 2011, she was again found by her primary care practitioner to have 2+ pitting edema to her upper shin and erythema circumferentially around her right lower leg, which the physician considered consistent with venous stasis.  (R. 12, at 8).  Plaintiff thus concludes that her documented history of chronic venous stasis along with significant edema supports her testimony that she must elevate her legs throughout the day to reduce swelling.  (R. 12, at 9).

Plaintiff's argument is unpersuasive.  In her hearing, Plaintiff testified that she was instructed by her doctors to elevate her legs to alleviate swelling.  (A.R. 397).  Plaintiff explained that at times it takes two hours of elevation just to alleviate the swelling.  (*Id.*).  However, the significant functional limitation advanced by Plaintiff is not corroborated by objective medical evidence.

In making his RFC determination, the ALJ considered medical records from Plaintiff's doctors which documented her reports of swelling and edema in her lower extremities. (*Id*. at 36). However, the ALJ noted that the medical records did not document any treating physician ordering the extensive elevation of the legs that Plaintiff claimed. (*Id.*). The ALJ also considered the absence of documentation of the level of swelling and edema one might expect to necessitate the level of elevation Plaintiff alleged. (*Id.*). The ALJ need only incorporate those limitations in his RFC assessment which he has deemed credible. *Stanley v. Sec'y Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994). Here, the ALJ considered Plaintiff's testimony as well as the objective medical evidence, and concluded that her limitations were not as severe as alleged. (A.R. 39). This finding is supported by substantial evidence.

Plaintiff also attempts to argue that the fact that the specific instruction to elevate her legs is not found in the written record does not mean that she was not instructed orally to elevate her legs. (R. 12, at 9). Plaintiff explains instructions to elevate her legs would be reasonable in light of documented instructions from her treating physicians to use Lasix and compression stockings. (*Id.*). However, the Sixth Circuit has recognized that a lack of physical restriction by a treating physician constitutes substantial evidence for a finding of non-disability. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005). Although Plaintiff cites to evidence that her treating physician prescribed compression stockings, this evidence does not equate to an order to elevate her legs for two hours a day. (R. 12, at 9).

Plaintiff further relies on an article on Chronic Venous Insufficiency (CVI)[2] from the Cleveland Clinic website to support her argument that the ALJ erred in finding her claim that she

---

[2] Plaintiff explains the terms "chronic venous stasis" and "chronic venous insufficiency" may be used interchangeably. (R. 12, at 7 n.1).

had to elevate her legs two hours a day not credible.  (R.12, at 9-10).  However, Plaintiff's reliance on this article is misguided.  As an initial matter, the article does not specifically pertain to Plaintiff. Moreover, there is no record that Plaintiff was provided with this information by her treating physician, and the article is not otherwise a part of the Administrative Record.  It is the Plaintiff's burden to establish she is disabled within the meaning of the Social Security Act in order to qualify for benefits.  *Key*, 109 F.3d at 274.  Aside from her own testimony and complaints, Plaintiff points to no objective evidence in the record to support her claim that she must elevate her legs for two hours a day.  The ALJ found the statements made by Plaintiff concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible to the extent they were inconsistent with the RFC assessment.  (A.R. at 39).  The ALJ was not required to account for Plaintiff's claimed functional limitations that were not supported by the record.  Therefore, the ALJ's RFC determination was not in error.

> **B.    The ALJ's decision regarding Plaintiff's credibility was supported by substantial evidence**.

Plaintiff next argues that the ALJ failed to make proper credibility findings when he discounted her testimony that her physician instructed her to elevate her legs above heart level for at least two hours a day.  (R. 12, at 11).  Additionally, Plaintiff claims that the ALJ improperly held Plaintiff's medical noncompliance against her, which she alleges was due to her inability to afford medication and testing strips.  (*Id*. at 12).  Plaintiff believes it was error for the ALJ to fault Plaintiff for being noncompliant with her medications and for not checking her blood sugar as frequently as recommended.  (*Id*.).

These arguments are unpersuasive. A claimant's statements as to "pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a). An ALJ can discredit a plaintiff's credibility if the record contains contradictions among the medical reports and subjective complaints. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); however, the ALJ must consider the entire case record, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). An ALJ's determinations regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d, at 531.

Although relevant to the RFC assessment, a claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical impairments or disability. Soc. Sec. Rule. 96-7p. When evaluating a claimant's symptoms, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.*. Once that is established, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the case record." *Rogers*, 486 F.3d at 247.

Here, Plaintiff contends that the record, when viewed as a whole, clearly supports her complaints of continued problems with swelling in her lower extremities as well as her statement that she must elevate her legs throughout the day to reduce this swelling. (R.12, at 9). However, the record reflects that the ALJ properly engaged in the two-part test for evaluating symptoms. (A.R.

37-40).  First, he found that Plaintiff had medical impairments that could reasonably be expected to cause those symptoms.  (*Id.* at 39).  He then proceeded to consider Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms, and concluded they were not fully credible to the extent they were inconsistent with the RFC determination.  (*Id.*).

The ALJ then explained in some detail the inconsistencies between Plaintiff's testimony and the objective medical evidence that supported his RFC determination.   The ALJ noted that the medical record did not document any treating physician ordering extensive elevation of the legs, despite Plaintiff's testimony to the contrary.  (*Id.*).  Similarly, medical records from Plaintiff's treating physicians also failed to document the level of swelling and edema one would expect with the extent of elevation Plaintiff alleges she requires.  (*Id.*).  The ALJ also emphasized that despite Plaintiff's testimony that she suffered from new bouts of cellulitis every four to five months, with each bout lasting up to sixteen days, the medical records did not substantiate her claims.  The ALJ acknowledged that Plaintiff had previously received treatment for cellulitis that eventually cost her most of her toes.  (*Id.*).  However, after her February 2010 amputations, Plaintiff had not required emergency room care for further developments of cellulitis, even though she testified that she always went to the emergency room for treatment.  (*Id.*).  The ALJ properly considered the objective medical evidence of record along with Plaintiff's testimony, and found that both were consistent with the ability to perform a range of sedentary work.  (*Id.*).

The ALJ did not find that Plaintiff's claims regarding her physical condition were not credible.   Neither did he find Plaintiff's complaints insincere or false.   In fact, the ALJ acknowledged, "[t]he claimant, in general, was credible and she has certainly suffered significant consequences due to her diabetic condition."  (*Id.*).  What the ALJ found not credible was the severe

degree of limitations Plaintiff alleged.  The objective evidence, according to the ALJ, did not conform to the alleged severity of her condition.  Although the record supports Plaintiff's claims of various physical problems, the record does refute her claim that she must elevate her legs for several hours a day, rendering her unable to sustain full-time work at a sedentary level.  Taken as a whole, the evidence substantially supports the ALJ's conclusion that Plaintiff was not disabled for purposes of the Social Security Act.

Additionally, Plaintiff argues that the ALJ improperly held her medical noncompliance against her, which Plaintiff alleges was the result of her inability to afford medication and testing strips.  (R.12, at 12).  Plaintiff claims that the ALJ failed to follow the dictates of SSR 96-7p, which specifies that he may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any reasons or explanations for the non-compliance.  (*Id*.).  Plaintiff argues that her failure to seek treatment may not be considered against her if she has no other way to afford or obtain treatment.  (*Id.* at 11).

Plaintiff's argument here is somewhat difficult to decipher.  In his RFC analysis, the ALJ found the Plaintiff's testimony to be generally credible, but then continued: "[h]owever, there are some non-compliance issues, that are only partially due to financial difficulties."  (A.R. 39).  Although the ALJ offered no further explanation for this statement, the Plaintiff has not specifically indicated how the ALJ erred on this point.  Plaintiff fails to explain her assertion that the ALJ improperly held her medical noncompliance against her.

From the Court's own review of the ALJ's decision, it is unclear what purpose the ALJ's statement served, as he offers no additional explanation or citation to the record in support of his

12

comment. But to the extent the ALJ referred to Plaintiff's noncompliance in weighing the credibility of her testimony, this was not in error. Evidence of a claimant's noncompliance may weigh against her credibility. SSR 96-7p. Despite Plaintiff's financial difficulties, the ALJ was still entitled to consider her medical noncompliance while making a credibility finding because the ALJ's finding was based on a number of factors. *See Tippett v. Colvin*, No. 6:12-cv-239-JMH, 2013 WL 3233579, at *7 (E.D. Ky. June 24, 2013) (holding ALJ's consideration of claimant's inconsistent medical treatment in making negative credibility determination was not in error even though claimant had financial difficulties). Credibility is a function of 'all of the evidence in the case record." SSR 96-7p. An ALJ must state "specific reasons for the finding on credibility, supported by the evidence in the case record, [which] must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for that weight." SSR 96-7p.

Here, the ALJ's decision makes clear that he found Plaintiff's testimony to be generally credible. (A.R. 39). However, the ALJ noted that Plaintiff "made several unsupported claims that do not reflect favorably on her overall credibility." (*Id.*). The ALJ concluded that although "the claimant's inconsistent statements do not represent a blatant attempt to misrepresent her functionality, they do suggest a higher degree of function than alleged." (*Id.*). In support, the ALJ gave specific reasons for his findings, citing to a lack of corroborating evidence in the objective medical record. (*Id.*). Although the ALJ referred to Plaintiff's medical noncompliance, which he notes was only partially due to financial difficulties, he goes on in his decision to focus on the objective medical evidence. (*Id.*). Specifically, the ALJ noted the lack the lack of documentation in the medical record of any treating physician ordering extensive leg elevation as Plaintiff claimed.

13

(*Id.*).  The ALJ also considered that Plaintiff had not sought care for cellulitis after February 2010, despite her claims that she went to the emergency room every four to five months for bouts of cellulitis.  (*Id.*).

Plaintiff fails to demonstrate error.  While the ALJ mentioned Plaintiff's noncompliance, his opinion did not rest upon the Plaintiff's allegedly excusable noncompliance with her treatment.  Rather, the ALJ noted that the degree of limitation alleged by Plaintiff was not supported by objective medical evidence of record.  Moreover, the ALJ gave Plaintiff's allegations "the fullest benefit of the doubt," and assigned an RFC to accommodate for her difficulties.  (A.R. at 39-40).  To the extent the ALJ discounted portions of Plaintiff's testimony, he supported his credibility finding with accurate citations to the medical record and to the factors set forth in 20 C.F.R. §§ 404.1529, 416.929, and SSR 96-7p.

A reviewing court should "decline to give substantial deference to [an] ALJ's unexplained credibility finding."  *Harris v. Heckler*, 756 F.2d 431, 436 (6th Cir. 1985).  Otherwise, the credibility finding of an ALJ should rarely be disturbed.  *See Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 254 (6th Cir. 1981).  The ALJ's finding in this case is supported by substantial evidence.

## IV.    CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's decision is supported by substantial evidence and should be affirmed.  Accordingly, **IT IS RECOMMENDED** that:

1.    The Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed**;

2.    Plaintiff's Motion for Summary Judgment (R. 12) be **denied**;

3.    Commissioner's Motion for Summary Judgment (R. 13) be **granted**; and,

4.      Judgment be entered and this matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived.  28 U.S.C. §636(b)(1)(C); Thomas v. Arn, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

Dated this 31st day of July, 2015.



**Signed By:**

*Candace J. Smith*

**United States Magistrate Judge**

G:\DATA\social security\14-37 Helton R&R.final.wpd

15